**In re TEXAS CORRUGATED BOX CORPORATION, Debtor.**

**HOUSTON CORRUGATED BOX CO., INC., Plaintiff,**

v.

**SUNBELT NATIONAL BANK, Defendant,**

**Ruth Smith and Texas Corrugated Box Corp., Intervening Defendants.**

**Civ. A. No. H–90–57.**
**Bankruptcy No. 88–0826–H5–11.**
**Adv. No. 90–071.**

United States District Court,
S.D. Texas,
Houston Division.

April 23, 1991.

Marcus E. Faubion, Houston, Tex., for plaintiff.

Susan J. Brandt, Houston, Tex., for defendant Sunbelt.

Otis Bakke, Houston, Tex., for debtor, plaintiff and intervening defendant Tex. Corr. Box.

Patrick F. Timmons, Jr., Houston, Tex., for intervening defendant Ruth Smith.

## OPINION ON DISMISSAL

HUGHES, District Judge.

1. *Introduction.*

Sunbelt National Bank removed this garnishment suit to federal court asserting that the issues remaining are core bankruptcy proceedings and that this court has exclusive jurisdiction. The bankruptcy court had adjudicated several bankruptcy-related disputes between the parties and then remanded the remainder of the case to state court. On an adverse interlocutory ruling by the state judge, Sunbelt removed the case to federal court again. Because

the issues that could be remanded are either moot or have been adjudicated, this case will be dismissed.

## 2. *Background.*

Houston Corrugated Box obtained a judgment in state court against Texas Corrugated Box in 1988. To enforce that judgment, Houston Box served Sunbelt National Bank with a writ of garnishment for the accounts of Texas Box. Four days later, before the bank had to answer the garnishment under the Texas rules, Texas Box filed a voluntary petition under chapter 11 of the bankruptcy code. The bank removed the garnishment to the bankruptcy court.

The bankruptcy court lifted the automatic stay and allowed the bank to apply Texas Box's account balances against a pre-petition debt that Texas Box owed the bank. The bankruptcy court also allowed Texas Box to enter into post-petition financing agreements with the bank. The bankruptcy court later confirmed Texas Box's reorganization.

The bankruptcy court denied the bank's motion to dissolve the writ of garnishment stating that "it was not appropriate under the Bankruptcy Code to dissolve the lien obtained by the garnishment simply because Sunbelt's lien was prior." Continuing, the bankruptcy court held that "any action Houston Corrugated Box may have to regain the actual account in state court is moot." The bankruptcy court remanded the case "for further determination of the rights between Houston Corrugated Box and Sunbelt National Bank, if any, that remain." *Report and Recommendation,* No. 88–0084 (March 17, 1988).

When the state judge did not summarily rule that Houston Box had no further claim, the bank again removed the case to this court, asserting exclusive federal jurisdiction over bankruptcy proceedings.

## 3. *Issues That Remain.*

Houston Box wants these issues heard in state court: (a) whether Texas Box filed for bankruptcy in bad faith merely to circumvent the garnishment; and (b) whether

the bank's offset coupled with the new loan were a sham to circumvent the garnishment. The bank's only claim in state court was for attorneys fees, but the bank withdrew this claim at the rehearing on the motion to remand, leaving nothing.

## 4. *Res Judicata.*

■ The bankruptcy court's orders and findings of fact are binding on the parties in state court. The bankruptcy court's adjudication of the priority of liens, allowance of the set-off, and approval of post-petition financing, as well as its finding that Texas Box filed for bankruptcy in good faith, were not for bankruptcy purposes only. The holdings of the bankruptcy court preclude the parties from relitigating these issues in any forum other than on a direct appeal.

## 5. *Priority of Liens and Set-off.*

■ The bankruptcy court expressly held that: (a) the bank had the first lien on the funds of Texas Box in the account at Sunbelt; (b) the garnishment lien of Houston Box was at best a third lien on the proceeds; and (c) the amount in Texas Box's accounts was less than enough to satisfy the bank's first lien. Because the bank's lien was prior to Houston Box's lien, the bankruptcy court allowed the bank to apply the account against the bank's claim.

If the bank had accelerated the Texas Box note and applied the accounts to the debt, the payment would have been a preference under bankruptcy law, and it would have had to be returned. Worse, it might have violated the automatic stay imposed in bankruptcy. After Texas Box filed bankruptcy, the bank's only opportunity to offset the accounts was to get a court order, which it did.

The bankruptcy court expressly addressed Houston Box's argument that the set-off was untimely, saying:

> [O]nce the bankruptcy filing occurred, all parties were stayed until the relief from stay matter was heard and the motion granted ... [Then] Sunbelt could validly accelerate the note and set-off the bank

account against the debt within the proper time frame after the relief from stay order was entered.

*Report and Recommendation,* No. 88–0084 (March 17, 1988). This issue has been adjudicated and adjudicated properly.

### 6. *Violation of A Texas Statute.*

█ A Texas statute prohibits a garnishee, after being served with the writ, from paying a debt to the defendant. If a payment is made, the transfer is void. Tex.Civ.Prac. & Rem.Code § 63.003(a). Houston Box claims that Sunbelt paid a debt due Texas Box when it applied the deposit account to the loan. This Texas statute does not, and could not, limit the authority of the bankruptcy court to arrange the affairs of the debtor in bankruptcy. It was the bankruptcy court that allowed the bank to pay the garnished funds to itself. The bank did not pay a debt to Texas Box; in offsetting the debt owed to it, the bank emptied Texas Box's account, eradicating the debt the bank owed to Texas Box, and eradicating the debt Texas Box owed to the bank.

This issue has been adjudicated. Whether the bank would have agreed to the new loan without an offset having been allowed is irrelevant. The money the bank loaned to Texas Box under the new financing agreement was a new debt to a new legal entity. Houston Box seems to forget that the old Texas Box and the new one are different creatures at law.

### 7. *Good Faith Filing.*

█ In confirming Texas Box's plan of reorganization under chapter 11, the bankruptcy court expressly found that the plan had been proposed in good faith. 11 U.S.C. Section 1129(a). The bankruptcy court's finding that the filing was in good faith is binding on Houston Box in all forums. If Houston Box believed the petition was filed in bad faith, or under a conspiracy with the bank to avoid the garnishment, it was obliged to assert this in bankruptcy court or to appeal the confirmation to the district court.

### 8. *Mootness.*

█ Other than the rulings necessarily made, the bankruptcy court abstained from determining the rights between the bank and Houston Box. Disputes between non-debtors, other than those required to support the bankruptcy court's rulings allowing the set-off and approving post-petition financing, should be decided by the state court. The bankruptcy court specifically remanded only actions against the bank warranting recovery on grounds other than those it had adjudicated. Houston Box has failed to raise an issue not already adjudicated.

█ An attempt to obtain the funds in Texas Box's accounts at Sunbelt is moot. The bankruptcy court said that "the money Houston Corrugated Box originally attempted to garnish through its writ of garnishment is gone ... there is no *res* for Houston Corrugated Box to obtain."

### 9. *Conclusion.*

Houston Box may understandably be frustrated by the tortured progress of its claim against Texas Box, but that unhappiness cannot be translated into continued litigation against those who have had their rights decided by the bankruptcy court. Bankruptcy cases have no winners, only survivors, and they are free from having to repeat their performance in another forum. Sunbelt did no wrong to Houston Box, and it has proved it.

### ORDER

The remand is vacated, and this case is dismissed as fully adjudicated.